UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLIEMARIA TORONTO ESA,<br><br>    Plaintiff,<br><br>    v.<br><br>NORTONLIFELOCK INCORPORATED, et al.,<br><br>    Defendants. | Case No. 20-cv-05410-RS<br><br>**ORDER SEVERING CLAIMS AND GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND** |

## I.  INTRODUCTION

According to defendants, this is one of six or more "cookie cutter" derivative complaints recently filed by plaintiff's counsel against various companies, all involving those companies' efforts (or lack thereof) to have boards, management, and/or workforces that appropriately reflect racial and gender diversity. In this case, plaintiff's focus is on an alleged historical lack of black board members at nominal defendant NortonLifeLock, Inc. Without questioning that there may be systemic under-representation in corporate boardrooms, or plaintiff's good faith in looking for legal recourse, the flaws in this putative class action complaint require dismissal, as explained below. State law claims subject to a forum selection clause will be severed and dismissed without prejudice.

## II.  BACKGROUND

In 2019 the California-based company known as Symantec spun off its consumer computer and identity protection assets, which were then set up as defendant NortonLifeLock in Arizona.[1] Plaintiff's basic liability theory is that NortonLifeLock's proxy statements filed in connection with the 2018, 2019, and 2020 annual shareholders' meetings were materially misleading. Plaintiff contends defendants represented that the company is committed to diversity and that the Board of Directors actively seeks diversity among its members, but that is false. Plaintiff refers to the following from proxy statements:

> <u>Diversity</u>. In addition to a diverse portfolio of professional background, experiences, knowledge and skills, the composition of the Board should reflect the benefits of diversity as to gender, race, and ethnic background. [2018 Proxy.]
>
> <u>Diversity</u>. In addition to a diverse portfolio of professional background, experiences, knowledge and skills, the composition of the Board should reflect the benefits of diversity as to gender, race, ethnic cultural and geographic backgrounds that reflect the composition of our global investors, customers, employees and partners. [2019 and 2020 Proxies.]
>
> In addition, we do not have a formal written policy with regard to the consideration of diversity in identifying candidates; however, as discussed above, diversity is one of the numerous criteria the Nominating and Governance Committee reviews before recommending a candidate. [2018, 2019, and 2020 Proxies.]

Plaintiff asserts that contrary to the statements and implications in the proxies, the Board has never in good faith actively sought minority candidates and, in fact, impeded nomination of qualified Black directors through its maintenance of "proxy access" provisions and refusal to adopt term limits for directors. The "proxy access" provisions about which plaintiff complains only permit nominations to the Board by shareholders or groups of shareholders who have at owned at least 3% of the company's outstanding shares—about $371 million worth—continuously

---

[1] The move to Arizona is relevant only to a personal jurisdiction argument defendants present as to state law claims arising from a proxy statement filed after that move. Because this order severs and dismisses the state law claims based on a forum selection clause, the personal jurisdiction issue is moot.

for at least 3 years. Plaintiff contends the effect of these provisions is to limit severely the number and diversity of new candidates. Defendants insist the provisions are completely typical for large public corporations, have neither a discriminatory intent nor effect, and are necessary to make the election process manageable.

Plaintiff also contends the proxies were also materially misleading because they asked shareholders to vote in favor of executive compensation "say on pay" proposals, but failed to disclose that none of NortonLifeLock's executive compensation decisions actually take into consideration whether the executives have been successful in achieving the company's stated diversity and inclusion goals. Rather, plaintiff alleges, issues relating to diversity do not carry significant weight in setting executive compensation and over 90% of executive compensation is based on the company's financial performance.

Without making pre-suit demand on the Board, plaintiff filed this action purporting to assert claims on NortonLifeLock's behalf against the individual defendants for violation of Section 14(a) of the Securities Exchange Act of 1934, as well as common law claims for breach of fiduciary duty, aiding and abetting, abuse of control, and unjust enrichment. Plaintiff alleges that as a result of defendants' purported failure "to create any diversity at the very top of the Company," Complaint ¶ 1, its "reputation, goodwill, and market capitalization have been harmed." *Id.*¶ 165. Plaintiff also alleges the company "has expended, and will continue to expend, significant sums of money" for (1) "costs incurred from having to hire new employees" to replace unspecified personnel who purportedly "have quit in protest over Defendants' misconduct," (2) "costs incurred from defending and paying settlements in discrimination lawsuits . . . ." *Id.* ¶ 167. Plaintiff names twelve current and former directors individually, only one of whom is also a NortonLifeLock employee.[2]

---

[2] Without opposition, defendants seek judicial notice of the company's bylaws, and the proxy statements referred to above. The parties vigorously dispute whether defendants' attempts to obtain judicial notice of a number of other materials directly or indirectly referred to in the complaint represents the practice condemned in *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988 (9th Cir. 2018), or falls within what is permissible under that authority. As defendants

CASE NO. 20-cv-05410-RS
3

III.  DISCUSSION

A.  Forum selection

NortonLifeLock's bylaws contain a forum selection clause purporting to require all derivative actions, with two exceptions, to be brought in Chancery Court in Delaware.[3] There is no argument that NortonLifeLock's forum selection clause is not generally enforceable, or that it would not ordinarily apply to derivative actions against the Board. The sole dispute is whether the forum selection clause can be applied to the federal Exchange Act claim, over which the Delaware Chancery Court unarguably lacks jurisdiction. Defendants contend the forum selection provision has only two exceptions, and if neither applies, then it does not matter if the Chancery Court can adjudicate the Exchange Act claim *per se*—rather, the rule generally applicable to forum selection clauses is that they are enforceable unless the designated forum effectively leaves plaintiff with no meaningful remedies at all. *See Yei A. Sun v. Advanced China Healthcare, Inc.,* 901 F.3d 1081, 1092 (9th Cir. 2018) ("a clause remains enforceable even when the contractually selected forum may afford the plaintiffs less effective remedies than they could receive in the forum where they filed suit . . . . [T]he fact that certain types of remedies are unavailable in the foreign forum does not change the calculus if there exists a basically fair court system in that forum that would allow the plaintiff to seek some relief.") Defendants then argue that because Delaware state law in fact provides remedies roughly equivalent to the Exchange Act for similar wrongdoing, the forum

---

ultimately recognize, however, none of their arguments stand or fall on material outside the four corners of the complaint, and additional judicial notice beyond the bylaws is superfluous. Accordingly judicial notice is granted as to bylaws and proxy statements and otherwise denied.

[3]  The clause states, in part, "*[A]ny derivative action brought by or on behalf of the Corporation*, and any direct action brought by a stockholder against the Corporation or any of its directors or officers, alleging a violation of the Delaware General Corporation Law, the Certificate of Incorporation or these Bylaws or breach of fiduciary duties or other violation of Delaware decisional law relating to the internal affairs of the Corporation, *shall* be brought in the Court of Chancery in the State of Delaware, which *shall be the sole and exclusive forum for such proceedings*. . . . Any person or entity purchasing or otherwise acquiring any interest in shares of capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this Section 9.7." Bylaws, Art. IX, Section 9.7 (emphases added).

1  selection clause may be enforced even though plaintiff will thereby be precluded from pursuing

2  her Exchange Act claim under that precise legal label and theory.

3       As to the two express exceptions in the forum selection provision, defendants insist neither

4  applies. The first one—"exception (a)"—is for "actions in which the Court of Chancery in the

5  State of Delaware concludes that an indispensable party is not subject to the jurisdiction of the

6  Delaware courts." Even plaintiff does not attempt to argue that applies here, as the Delaware Court

7  has made no such conclusion. Exception (b) is for "actions in which a federal court has assumed

8  exclusive jurisdiction of a proceeding." Defendants vigorously insist meaning must be given to the

9  phrases "has assumed" and "of a proceeding." The fact that this court has addressed its jurisdiction

10 in this case, however, is not equivalent to a conclusion that it has assumed "exclusive

11 jurisdiction."

12      The approach taken in *In re Facebook, Inc. S'holder Derivative Privacy Litig.*, 367 F.

13 Supp. 3d 1108 (N.D. Cal. 2019) is appropriate here. The *Facebook* court found it had discretion to

14 sever the federal claim, and dismiss the remaining state claims in favor of the Delaware forum. *Id*.

15 at 1120. *See also Ocegueda v. Zuckerberg*, 2021 WL 1056611, at *8 (N.D. Cal. Mar. 19, 2021)

16 (taking same approach). Accordingly, the state law claims are dismissed without prejudice to their

17 reassertion in the Delaware Court of Chancery.

18

19   B.  Demand futility

20      It is a "basic principle of corporate governance" that a corporation's decisions—"including

21 the decision to initiate litigation—should be made by the board of directors." *In re Facebook, Inc.*

22 *S'holder Data Privacy Litig.*, 367 F. Supp. 3d 1108, 1123 (N.D. Cal. 2019). Because derivative

23 actions "effectively wrest[] control from the board of directors," FRCP 23.1 dictates that "a

24 shareholder seeking to vindicate the interests of a corporation through a derivative suit must first

25 demand action from the corporation's directors or plead with particularity the reasons why such

26 demand would have been futile." *Id*.; *Bhonagiri v. Pandey*, 2020 WL 5893404, at *2 (N.D. Cal.

27 Oct. 5, 2020). These pleading requirements are "stringent," *Quinn v. Anvil Corp.*, 620 F.3d 1005,

28

1012 (9th Cir. 2010),

Although Rule 23.1 controls "the adequacy of a plaintiff's pleadings, the substantive law which determines whether demand is futile is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief"—here, Delaware. *City of Birmingham Relief & Ret. Sys. v. Hastings*, 2019 WL 3815722, at *4 (N.D. Cal. Feb. 13, 2019). Delaware law is "clear that the bar is high, the standards are stringent, and the situations where demand will be excused are rare." *Canty v. Day*, 13 F. Supp. 3d 333, 345 (S.D.N.Y. 2014) (internal citation omitted). Corporate directors "are entitled to a presumption that they were faithful to their fiduciary duties,' and 'the burden is upon the plaintiff . . . to overcome that presumption.'" *In re Impax Labs., Inc. S'holder Deriv. Litig.*, 2015 WL 5168777, at *4 (N.D. Cal. Sept. 3, 2015) (quoting *Beam v. Stewart*, 845 A.2d 1040, 1048-49 (Del. 2004)).

Although the complaint asserts there were only eight board members at the time of filing, such that plaintiff would have to show disqualification of four, the parties now agree there were nine board members and plaintiff must show that at least five of them could not have properly responded to a demand. What the parties refer to as "the Demand Board" consists of Vincent Pilette (CEO) (director since 2019), Frank E. Dangeard (director since 2007), Sue Barsamian (director since 2019), Nora Denzel (director since 2019), Peter A. Feld (director since 2018), Kenneth Y. Hao (director since 2016), David W. Humphrey (director since 2016), V. Paul Unruh (director since 2005), and Eric K. Brandt (director since 2020). While the board may not have included any black members until after the complaint was filed, it apparently has included women and other racial minorities.

The familiar test is *Rales*—a plaintiff must "allege particularized facts that 'create a reasonable doubt that . . . the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.'" *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 120 (Del. Ch. 2009) (quoting *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993)). Plaintiff also argues her claim can proceed under the demand futility standard articulated in *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), insofar as she alleges the Board ignored unlawful

and discriminatory practices. *Aronson*, however, applies where a plaintiff challenges a specific board decision, and allows the shareholder to show *either* that the demand board is interested and not independent, *or* that a challenged decision was not an exercise of reasonable business judgment. *Id* at 814. Here, plaintiff does not point to a specific decision or decisions to which an *Aronson* analysis is well-suited. Even if that were not so, her invocation of *Aronson* adds nothing of substance, because it merely allows plaintiff to show demand futility either under the *Rales* standard or by showing that a challenged board action was not a valid exercise of business judgment. Plaintiff does not argue the second option here, instead only asserting interestedness and a lack of independence.[4]

The issue then, is whether plaintiff has pleaded sufficient facts to show at least five of the Demand Board directors are not disinterested because they face a substantial likelihood of liability, which would include establishing their knowledge of illegal conduct. Defendants fault plaintiff for making no effort at such a showing on a director-by-director basis. While cases often conduct the inquiry one director at a time, it is not clear that is always required. In theory, at least, a plaintiff might be able to rely on sufficiently detailed factual allegations that apply to every member of the board, without expressly repeating those allegations for each member. That said, plainly there must be a showing that the relevant facts apply to each of the board members (up to the requisite number for a majority)—therefore, the "director-by-director" analysis ensures both that is satisfied, and that no director is counted as interested merely because he or she is a member of the board.

Here, defendants' emphasis on plaintiff's failure to address disqualification "director-by-

---

[4] Defendants' moving papers also argued plaintiff cannot succeed on a so-called *Caremark* claim, which requires showing that "(a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system of controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006); *In re Caremark Int'l., Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996)). In opposition, however, plaintiff disavows any attempt to rely on such a theory.

director" addresses the second point—plaintiff's attempt to tar the entire Demand Board as disqualified rests on unduly conclusory assertions that, as Board members, they all necessarily had knowledge of, and are responsible for, the discrepancies between the assertions in the proxies and the alleged true state of affairs. *See In re Paypal Holdings, Inc. S'holder Deriv. Litig.*, 2018 WL 466527, at *5 (N.D. Cal. Jan. 18, 2018) ("[C]onclusory allegations are not considered.").

Also of particular import here is an exculpatory provision in NortonLifeLock's bylaws. The bylaws provide that any officer or director "shall be . . . held harmless by the Corporation to the fullest extent permitted by the Delaware General Corporation Law, against all expenses, liability and loss" arising out of his or her service to NortonLifelock. If "directors are contractually or otherwise exculpated from liability for certain conduct, then a serious threat of liability may only be found to exist if [the Plaintiff] pleads a non-exculpated claim against the directors based on particularized facts," *In re Facebook,* 367 F. Supp. 3d at 1124. "Negligent or even reckless conduct is insufficient," *In re Paypal*, 2018 WL 466527, at *3. Under these standards, plaintiff has not adequately alleged demand futility, and the Section 14(a) claim must be dismissed.[5] *See also Ocegueda*, 2021 WL 1056611, at *7 (reaching same conclusion on indistinguishable facts).

C. Rule 12 (b)(6)

An argument could be advanced that if demand has not been made or excused, plaintiff lacks standing to bring the claim, such that a court should not pass on the merits of the pleading. In this instance, however, consideration of defendants' challenge to the complaint under Rule 12(b)(6) is appropriate as an alternative basis for dismissal.

A complaint must contain "a short and plain statement of the claim showing that the

---

[5] Plaintiff argues one defendant, CEO Vincent Pilette, is not "independent" because he is highly compensated by the company. More typically, a lack of "independence" in the context of demand futility refers to directors who are unduly influenced by other directors, and there is no basis to make such a claim about Pilette. It is also superfluous to plaintiff's contention that the entire Board is disqualified, and does not assist her when that claim fails, since one disqualified member would not be enough.

1   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not
2   required," a complaint must include sufficient facts to "state a claim to relief that is plausible on its
3   face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S.
4   544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court
5   to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

6   Claims grounded in fraud are also subject to Rule 9(b), which provides that "[i]n
7   allegations of fraud or mistake, a party must state with particularity the circumstances constituting
8   fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy that rule, a plaintiff must allege the "who, what,
9   where, when, and how" of the charged misconduct. *Cooper v. Pickett,* 137 F.3d 616, 627 (9th
10  Cir.1997).

11  A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil
12  Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus.*
13  *v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995). Dismissal under Rule 12(b)(6) may be based
14  either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged
15  under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th
16  Cir.1988). When evaluating such a motion, the court must accept all material allegations in the
17  complaint as true, even if doubtful, and construe them in the light most favorable to the non-
18  moving party. *Twombly,* 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted
19  inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim."
20  *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir.1996); *see also Iqbal,* 556 U.S. at
21  678 (citing *Twombly,* 550 U.S. at 555 ("threadbare recitals of the elements of the cause of action,
22  supported by mere conclusory statements," are not taken as true)).

23  Here, plaintiff seeks to impose liability under Section 14(a) of the Exchange Act. To state a
24  claim under that section and the related SEC Rule 14a-9, the plaintiff must allege that the proxy
25  statements contained either (1) a false or misleading declaration of material fact, or (2) an
26  omission of material fact that makes any portion of the statement misleading. 15 U.S.C. § 78j(b);
27  17 C.F.R. § 240.14a-9; *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000). The
28

1  plaintiff must specify each statement alleged to be misleading and the reason or reasons why the
2  statement is misleading. 15 U.S.C. § 78u-4(b)(1); *Desaigoudar*, 223 F.3d at 1023. "[A] Section
3  14(a), Rule 14a-9 plaintiff must demonstrate that the misstatement or omission was made with the
4  requisite level of culpability and that it was an essential link in the accomplishment of the
5  proposed transaction." *Id.*

   The complaint here simply does not plausibly plead an actionable false statement. Courts routinely find similar statements to be non-actionable puffery or aspirational (and hence immaterial). *See, e.g., Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276 (9th Cir. 2017) (statements "to commit to certain 'shared values . . . not capable of objective verification' "); *Lopez v. Ctpartners Exec. Search, Inc.*, 173 F. Supp. 3d 12, 19, 26–29 (S.D.N.Y. 2016) (company's statements about commitment to a "diverse workforce" and "an inclusive and positive working environment" were "immaterial puffery"); *Nathanson v. Polycom, Inc.*, 87 F. Supp. 3d 966, 976–77 (N.D. Cal. 2015) (commitment to ethical practices "'inherently aspirational and hence immaterial' "); *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett–Packard Co.*, 52 F. Supp. 3d 961, 965, 970 n.2 (N.D. Cal. 2014) ("commitment to highest standards of governance [is] quintessential, non-actionable puffery"), aff'd, 845 F.3d 1268 (9th Cir. 2017); *Ocegueda*, 2021 WL 1056611, at *9.

## IV.  CONCLUSION

Plaintiff's claim under Section 14(a) is dismissed for failure to allege demand futility and/or for failure to state a claim. Any amended complaint shall be filed within 30 days of the date of this order. Plaintiff's common law claims are dismissed without prejudice to refiling in Delaware, pursuant to the forum selection clause.

**IT IS SO ORDERED**.

Dated: August 30, 2021

_____
RICHARD SEEBORG
Chief United States District Judge